UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN H. UNDERHILL,

    Plaintiff,

v.                                                                         Case No. 2:17-cv-154
                                                                           HON. PAUL L. MALONEY

STUART A. BEST,
GARY D. POPOVITS, &
BRANDT, PEZZETTI, VERMETTEN
& POPOVITS, P.C.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff John H. Underhill, a licensed attorney, initiated this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). On May 10, 2018, the Court granted Defendant Stuart A. Best's motion to dismiss for failure to state a claim. (ECF No. 15). Following his dismissal, Best filed a Motion for Sanctions Pursuant to 28 U.S.C. § 1927. (ECF No. 17).[1] The Court has referred this motion to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons stated below, the undersigned recommends that the Court grant Best's motion and order sanctions in the amount of $9,528.10 against Underhill.

In its previous opinion, the Court summarized the facts as follows:

> Plaintiff John Underhill is a consumer and homeowner, and he suffered water damage to his basement. Luckily, his homeowner's insurance policy covered the damage, and his insurer issued a check made out to Underhill and his mortgagor, Soo Co-Op Credit Union. Underhill endorsed the check and deposited it with Soo Co-Op.

---

[1] The undersigned notes that even after the Court granted a proposed order extending the response deadline, Underhill filed his response late. (ECF Nos. 26 & 28).

Underhill selected an entity called Lechner Construction to perform the necessary repairs to his basement. However, Underhill asserts that Lechner Construction did not perform as agreed, so he chose to terminate the arrangement, and he did not have the company "reconstruct" the basement. After that, he says that he agreed with Lechner Construction for the payment of a lesser amount for its already-performed work.

On June 9, 2017, Underhill told Soo Co-Op to issue a cashier's check to Lechner Construction for $17,135.96 to pay for the repairs. At some point in this process, Underhill also called Soo Co-Op and told it to apply a portion of the insurance proceeds as his July mortgage payment.

The cashier's check never made it to Lechner Construction's account. Mark Lechner signed an affidavit averring that the check had been fraudulently signed over to Underhill and that Lechner Construction had never been paid for any of its work. The company also refused to execute a waiver for its lien on Underhill's home. Underhill asserts that Lechner Construction was not licensed and insured pursuant to Michigan law, so it was not entitled to any proceeds for its work.

Instead of going to Lechner Construction, the check was deposited in Underhill's account at mBank. But as a result of the alleged forgery, mBank reversed the deposit and issued a check back to Soo Co-Op Credit union and placed a stop-payment on the check. The full amount of the check was no longer in Underhill's account, so mBank withdrew what it could from Underhill's account ($6,063.22) and charged him for the remaining $11,072.74.

After taking these steps, mBank filed an interpleader complaint in state court, naming Underhill, Lechner Construction, and Soo Co-Op as defendants. Essentially, mBank did not know who owed what, and it wanted the court to resolve the issue.

Soo Co-Op retained Defendant Stuart Best to represent it in resolving issues arising out of Underhill's insurance claim, including the interpleader action. In that capacity, Best allegedly called Underhill once and wrote two letters to him that form the basis for this Fair Debt Collection Practices Action.

In a letter dated July 14, 2017, Best wrote to Underhill to advise him that Soo Co-Op had retained him. He informed Underhill of the circumstances leading to his retention—as has been summarized above. And Best informed Underhill that the remaining funds in

> escrow at Soo Co-Op would not be applied as a payment on his mortgage because of the outstanding issues in the interpleader suit. Best also wrote that the funds would remain in escrow until a full waiver of lien and completion certificate was issued by Lechner Construction. Best concluded the letter by informing Underhill that, because the escrow funds could not be used as a mortgage payment, his July payment was past due. Best closed the letter by indicating that Underhill could expect Soo Co-Op to continue to communicate with him about his mortgage payments, but that "any other communication regarding this matter is to be directed to me. I will address all issues as to the check insurance proceeds as well as the release and waver [sic] of the lien."
>
> Best wrote a second letter to Underhill on August 31, 2017, again addressing the funds remaining in escrow at Soo Co-Op. This time, Best wrote to inform Underhill that the amount of money that did not pertain to Lechner's repair bill or the previous attempted mortgage payment was considered insurance proceeds relating to Underhill's loss of personal property. Best instructed Underhill to complete an attached form releasing Soo Co-Op from liability for releasing the funds and indicated that the funds would be released upon its receipt.

(ECF No. 15, PageID.119-122) (footnote omitted).

Based on these series of events, Underhill alleged that Best violated the Fair Debt Collection Practices Act in the following ways:

> (A) Claiming that the Plaintiff is indebted to the credit union in the amount of the check attached as ex. "A", in violation of 15 USC § 1692e(2)(A), for falsely representing the "character", "amount" and/or "legal status" of a debt because there is no "debt" because the credit union has, at most, a security interest to protect, "Lechner" cannot claim it/he/she is owed any money as a matter of law AND there cannot be a "debt" arising out of the Plaintiff's own insurance proceeds AND the credit union does not have legal standing to even be involved in a dispute between the Plaintiff and "Lechner" because "Lechner" does not exist as ANY legal entity;
>
> (B) Falsely claiming that the Plaintiff committed a crime or other conduct, based simply on the bald allegations of a 3rd party, simply to disgrace the Plaintiff, in violation of 15 USC §1692e(7);
>
> (C) After being informed of the above by the Plaintiff about "Lechner", continuing to claim that the Plaintiff was/is indebted to

>   the credit union, which was false and/or deceptive, in violation of 15 USC §1692e(10);
>
>   (D) Attempting to collect the amount of the check attached as exhibit "A" when it was not expressly authorized by any agreement, or permitted by law because "Lechner" is prohibited by law from seeking any compensation for performing work on the Plaintiff's home, as more particularly described above, in violation of 15 USC §1692f(1); and
>
>   (E) Threatening to take legal action to collect a "debt" it knew did not exist, could not legally be taken and/or without any intention of doing so, in violation of 15 USC §1692e(5).

(ECF No. 1, PageID.6-7).

Best filed a motion to dismiss or, in the alternative, for summary judgment. (ECF No. 10). Best first argued that he was not acting as a debt collector because the animating purpose of his communication with Underhill was not to induce payment or collect a debt. Best also argued that even if he was acting as a debt collector, his actions did not violate the FDCPA. In a short response, Underhill asserted that Best was acting as a debt collector when he wrote the two letters at issue. (ECF No. 13). However, Underhill did not address the second argument—whether Best's actions violated the FDCPA. Instead, Underhill concluded his brief by stating: "So as not to belabor the point, the plaintiff has clearly set out in his complaint violations of the FDCPA, not the least of which is threatening a lawsuit, then filing a lawsuit against the plaintiff and then voluntarily dismissing it, but failing to reimburse the plaintiff[']s insurance proceeds." (PageID.107).

On May 10, 2018, the Court granted Best's motion under Fed. R. Civ. P. 12(b)(6) and dismissed the claims against him. After reviewing the two letters, the Court determined that Best was not acting as a debt collector as "it [was] not plausible that an animating purpose of the communications was to induce payment on a debt." (PageID.126). In making this determination,

the Court relied on the fact that the letters established that Best was only handling issues related to the insurance proceeds and that Best had no involvement in Underhill's mortgage with Soo Co-op. The Court also determined that even if Best was acting as a debt collector, Underhill failed to plead any facts to establish that Best violated the FDCPA. The Court stated:

> First, Underhill asserts that Best falsely represented that Underhill was indebted to the credit union in the amount of $17,135.96. There is no factual basis for this assertion. Underhill's theory is that Best's statement was false because Lechner Construction was unlicensed and thus, under state law, could not recover. Underhill's assertion reflects a misunderstanding of the nature of the interpleader. Best was not falsely asserting that Underhill owed the credit union anything; he was merely explaining the credit union's position in the interpleader. Lechner's status as a licensed or unlicensed contractor had not been adjudicated, so it is irrelevant to the letter Best wrote. Underhill is also incorrect that Soo Co-Op had no standing to be involved in the dispute between Underhill and Lechner Construction. Mortgagors have a long-recognized right to ensure that their property interest is protected. The insurance proceeds check was issued jointly to Underhill and Soo Co-Op. Thus, Underhill has not pleaded facts that could even plausibly give rise to a claim under Section 1692e(2)(A) of the FDCPA.
>
> Second, Underhill has not proffered a sufficient factual basis to maintain a claim that Best threatened to take an action that cannot legally be taken or is not intended to be taken under 15 U.S.C. § 1692e(5). The litigation was already underway, and it was not even filed by Soo Co-Op. The interpleader named both Soo Co-Op and Underhill as defendants, and it was meant to resolve the dispute over Lechner's claim to the insurance proceeds for work it had performed. Best did not mention any other type of legal process in either letter. Thus, even in the light most favorable to Underhill, he has not stated facts that could plausibly give rise to a claim under this section.
>
> Third, Underhill makes the bald assertion that Best falsely represented or implied that Underhill had committed a crime, a violation of § 1692e(7). This too is wholly implausible. The closest Underhill comes to pleading a violation is Best's statement in the July 14, 2017 letter that Soo Co-Op "had been advised that Lechner claims that they did not negotiate the check." Thus, the implication could be that Underhill had fraudulently negotiated the check to himself. However, this statement does not fall within the purview of

> § 1692e(7) because Best was merely relating Lechner Construction's position as to the interpleader action. Even in the light most favorable to him, Best falls well short of pleading facts that Best himself had represented that Underhill had committed a crime.
>
> Finally, Underhill alleges that Best used false representations or deceptive means to collect on a debt and that Best was attempting to collect on a debt that was not expressly authorized by any agreement. Once again, these claims must fail because Best's letters were explicitly relating to the insurance claim and the subsequent dispute over the insurance proceeds. As to the former, Best never asserted that Underhill was indebted to the Soo Co-Op for any portion of the insurance claim. Best was only relating the credit union's position as to the interpleader. As to the latter, the letters plainly state that Best is representing Soo Co-Op in the interpleader. Best was not attempting to collect on a debt, and certainly not a debt that was not expressly authorized or permitted by law, as required under § 1692f(1). Again, Best never attempted to collect the insurance proceeds from Underhill. Underhill has simply not pleaded facts that would support these claims, so dismissal is warranted.

(ECF No. 15, PageID.127-129).

"Under the American Rule it is well established that attorney's fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" *Summit Valley Industries v. United Brotherhood. of Carpenters & Joiners*, 456 U.S. 717, 721 (1982) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). One such statute permitting attorney's fees is Section 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "A court may sanction an attorney under § 1927, even in the absence of bad faith, when the attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Gibson*

-6-

*v. Solideal USA, Inc.*, 489 F. App'x 24, 31 (6th Cir. 2012) (citing *Rentz v. Dynasty Apparel Industries, Inc.*, 556 F.3d 389, 396 (6th Cir. 2009); *Hall v. Liberty Life Assur. Co. Of Boston*, 595 F.3d 270, 275 (6th Cir. 2010)).  "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987). "Under this objective standard, '§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence.'" *Rentz*, 556 F.3d at 396 (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)).  "The statute is applicable not only to lawyers who represent clients but also to a lawyer who represents himself[.]"  *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010).

In *Mabbitt v. Midwestern Audit Serv., Inc.,* 2008 WL 1840620 (E.D. Mich. Apr. 23, 2008), the court awarded sanctions pursuant to § 1927 in a case involving FDCPA claims.  In that case, the court found that the defendant "never attempted to collect a debt; it simply notified [the plaintiff] that an outstanding balance was transferred to her new account."  *Id.* at *3.  The court also found that the plaintiff only received one letter from the defendant and that the defendant did not use an abusive method to collect the debt.  *Id.*  Based on these facts, the court held "that the FDCPA claims pursued by Plaintiff were frivolous and that Plaintiff's counsel knew or reasonably should have known this."  *Id.*  Therefore, the court determined that sanctions pursuant to § 1927 were warranted.  *Id.*

Similar to *Mabbitt*, the undersigned finds that Underhill knew or should have known that he was pursuing frivolous claims against Best.  As the Court already determined, Underhill's claims against Best were "wholly implausible."  Underhill continues to argue that

because Best has acted as a debt collector in the past and has been sued as a debt collector in the past, he must have been acting as a debt collector in this case. But, as the Court stated, the FDCPA does not apply to every communication between a debtor and debt collector. (PageID.125). "For a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). And, as the Court explained, "A review of the letters Best wrote to Underhill make clear that it is not plausible that an animating purpose of the communications was to induce payment on a debt." (PageID.126).

In addition, Underhill argues that sanctions are not warranted because "there was utterly nothing done in this case[.]" (PageID.216). Underhill is correct that little was done in this case. The docket sheet reflects that (1) Underhill filed the complaint; (2) Best filed a motion for extension of time; (3) Best filed a motion to dismiss, or in the alternative motion for summary judgment; (4) the parties filed a stipulation extending the response deadline; (5) Underhill filed a response; and (6) Best filed a reply. The parties never engaged in any discovery. However, the problem with Underhill's argument is that his claims against Best were frivolous from the beginning. Underhill, as a licensed attorney admitted to practice before this Court, knew or should have known that his claims against Best were frivolous. "The Sixth Circuit has held that when an attorney's unreasonable and vexatious conduct begins at the outset of his/her representation and persists through the pendency of the case, the attorney is properly liable under § 1927 to pay attorney fees that began to accrue at the commencement of the case." *In re Royal Manor Management, Inc.*, 652 F. App'x 330, 336 (6th Cir. 2016) (citing *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997)). The fact that little was done in this case is reflected in the requested amount of attorney's fees.

Having determined that sanctions are warranted under § 1927, the undersigned must next determine what is a reasonable amount of attorney's fees. "The starting point for determining the amount of a reasonable attorney fee is the "lodestar" amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 551-52 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Applying the lodestar method, Best has requested $9,219.10 in attorney's fees. He submitted billing records to establish that Attorney Hengeveld spent 22.5 hours working on this case and Attorney Mitzel spent 9.4 hours working on this case. Best contends that Attorney Hengeveld should be billed at $309 per hour and Attorney Mitzel should be billed at $274 per hour. These rates were calculated by averaging the following five factors: the attorney's position at the firm, years in practice, firm size, office location, and field of practice. Underhill has neither objected to any of Best's calculations nor offered any reason to depart from the lodestar amount. Other district courts in this circuit have used similar market rates when assessing attorney's fees in FDCPA matters. *See, e.g*, *Miller v. Asset Acceptance*, LLC, 2017 WL 4111446, at *3 (N.D. Ohio, Sept. 18, 2017) (accepting $300.00 per hour). However, the undersigned finds that Best's calculations are incorrect. The total amount equates to $9,528.10 (22.5 x $309 = $6,952.5) + (9.4 x $274 = $2,575.6). Therefore, the undersigned recommends that the Court award sanctions in the amount of $9,528.10.

Accordingly, the undersigned recommends that the Court grant Best's motion for sanctions (ECF No. 17) and award attorney's fees in the amount of $9,528.10.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  August 8, 2018

                                             /s/ Timothy P. Greeley  
                                            TIMOTHY P. GREELEY  
                                            UNITED STATES MAGISTRATE JUDGE